909 A.2d 1261

**David COHEN, Appellant**

v.

**WORKERS' COMPENSATION APPEAL BOARD
(CITY OF PHILADELPHIA), Appellee.**

Supreme Court of Pennsylvania.

Argued April 3, 2006.

Decided Nov. 22, 2006.

W. Michael Mulvey, Richard Raymond Budney, Jr., Philadelphia, for David Cohen, appellant.

Amber Marie Kenger, Richard C. Lengler, Harrisburg, for W.C.A.B., appellee.

Martin Malloy, Philadelphia, for City of Philadelphia, appellee.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

Justice SAYLOR.

Appeal was allowed to consider whether a workers' compensation judge is bound to afford preclusive effect to a determination by the Philadelphia Civil Service Commission under Philadelphia Civil Service Regulation 32.

Claimant, David Cohen, was employed as a Philadelphia police officer. In February 2000, he suffered work-related injuries when he was struck by a motor vehicle while pursuing a suspect on foot. The City of Philadelphia, as his employer, recognized the injuries and issued a notice of compensation payable, thus implicating workers' compensation benefits. *See* 77 P.S. § 731. Under Philadelphia Civil Service Regulation 32, however, a police officer who is injured on duty may be entitled to collect his full salary during a defined period of disability in lieu of workers' compensation benefits. *See* PHILA. CIV. SERV. REG. 32.0231, 32.09.[1] The City initially proceeded

1. Under prevailing authority arising out of the Commonwealth Court, Philadelphia Civil Service Regulation 32.0231 represents the mechanism by which the City effectively fulfills some or all of its obligations under the Heart and Lung Act, Act of June 28, 1935, P.L. 477 §§ 1–2 (as amended 53 P.S. § 637–638) (allowing police and fire personnel to collect full salary benefits for temporary injuries sustained in the performance of their duties). *See City of Philadelphia v. Fraternal Order of Police Lodge No. 5,* 723 A.2d 747, 752–53 (Pa.Cmwlth.1999) (explaining that the holding of this Court in *Ebald v. City of Philadelphia,* 387 Pa. 407, 128 A.2d 352 (1957), to the effect that Philadelphia's Home Rule Charter supplanted the Heart and Lung Act, was no longer viable in light of a subsequent legislative amendment bringing officers of the

under these regulations, Claimant was placed on "injured on duty" status, and he received his full wages under the Regulation 32 program for almost four months. Under the same set of regulations, however, Claimant's condition was subject to continuing review by Philadelphia's Medical Director, *see* PHILA. CIV. SERV. REG. 32.031, under whose authority Claimant was returned to limited-duty status as of May 2000. Thereafter, the City issued a notice of suspension for purposes of the workers' compensation scheme. *See* 77 P.S. § 774.2.

In July 2000, Claimant underwent an independent medical examination conducted by an orthopedic surgeon, and in September 2000, he underwent a neurological evaluation. Following these assessments, a physician authorized by the Medical Director determined, as of October 2000, that Claimant was capable of returning to full-duty status. The City directed Claimant to return to duty, and, although Claimant initially acceded, he contended that he was unable to continue due to ongoing pain associated with his work injuries.

Claimant then proceeded on dual tracks with attempts to vindicate an entitlement to continuing benefits arising out of his work injuries. First, he challenged his assigned duty status by filing an appeal to the Philadelphia Civil Service Commission (the "Commission"), under Philadelphia Civil Service Regulation 32.11. The same month, he also filed a petition to reinstate workers' compensation benefits and a penalty petition, alleging that Employer had violated the terms of the Workers' Compensation Act,[2] by refusing to reinstate his benefits.[3]

The Commission's decision, issued in October 2001, preceded that of the workers' compensation judge. Based on its consideration of Claimant's testimony and medical evidence, as well as contrary medical evidence presented by the City, the

City of Philadelphia into line with the benefits enjoyed by others throughout the Commonwealth); *cf. City of Philadelphia v. Schweiker*, 579 Pa. 591, 611, 858 A.2d 75, 87–88 (2004).

**2.** Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.4; 2501–2626).

**3.** The City responded with a petition to terminate workers' compensation benefits.

Commission denied the appeal. In its opinion, initially the Commission recognized that Claimant suffered numerous work-related injuries, including fractured ribs, back strain, and shoulder, head, kidney, ankle, and knee damage. Further, the Commission acknowledged that Claimant presented testimony from a physician indicating that he continued to suffer disabling conditions, including a herniated disc and nerve damage, and was incapable of returning to work as a police officer. The Commission, however, credited the medical evidence offered by the City supporting the conclusion that Claimant's injuries had resolved. The Commission also specifically rejected Claimant's testimony and that of his physician and adopted an observation by the independent medical examiner that Claimant "appears to be a young, strong, male with basically only subjective complaints." [4]

The workers' compensation judge issued her decision in March 2003, granting Claimant's reinstatement petition.[5] Initially, she acknowledged that the Commission had concluded that Claimant was capable of serving in a full-duty capacity and the City's position that such determination should be accorded preclusive effect in the workers' compensation proceedings, via application of collateral estoppel or issue preclusion. The workers' compensation judge, however, rejected this argument, reasoning:

The Worker's Compensation Judge is not bound by the decision of the Philadelphia Civil Service Commission. Such a result would be contrary to the desire of the legislature. Under the Workers' Compensation Act, there are specific rules and procedures to be followed for injuries that occurred on the job. The Workers' Compensation Judge may subpoena witnesses, hear evidence, make a record of hearings, and issue Findings of Fact, Conclusions of Law and Order[s]. The Claimant has the right to appeal.

4. Claimant unsuccessfully pursued appeals in the common pleas court and the Commonwealth Court. Both tribunals regarded the appeals as comprising impermissible challenges to the Commission's credibility assessments.

5. The workers' compensation judge also denied Claimant's penalty and Employer's termination petitions.

In this case, the Claimant's injury was accepted via a Notice of Compensation Payable. [The City] cannot now attempt to circumvent the Act. Such a result would be contrary to public policy.

The workers' compensation judge proceeded to evaluate the conflicting medical evidence presented by Claimant and the City, and, contrary to the Commission's approach, she specifically accepted Claimant's testimony, and that of his medical expert, as credible. Accordingly, she directed the City to reinstate weekly temporary total disability benefits to Claimant as of November 2000 and to reimburse Claimant's medical expenses and litigation costs.

The City lodged an appeal in the Workers' Compensation Appeal Board (the "Board"), which accepted the City's position that relief was barred, by collateral estoppel, due to the Commission's prior decision. The Board explained that collateral estoppel, or issue preclusion, generally will foreclose relitigation of issues of law or fact in a subsequent action, where the following criteria are met:

(1) when the issue in the prior adjudication was identical to the one presented in the later action; (2) when there was a final judgment on the merits; (3) when the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; (4) when the party against whom it is asserted has had a full and fair opportunity to litigate the issue in a prior action; and (5) when the determination in the prior proceeding was essential to the judgment.

*Cohen v. City of Philadelphia*, A03–0936, *slip op.* at 4 (W.C.A.B. May 24, 2004) (citing *Callaghan v. WCAB (City of Philadelphia)*, 750 A.2d 408, 412 (Pa.Cmwlth.2000)). Moreover, the Board observed that, in order for collateral estoppel to apply between administrative agencies, there must be a showing of identical policies underlying the matter at issue in both proceedings. *See Logue v. WCAB (City of Philadelphia)*, 660 A.2d 175, 176 (Pa.Cmwlth.1995). The Board found there to be a common issue between the proceedings concerning Claimant's physical ability to work as a police officer; that the issue was actually litigated to final judgment in the

Commission proceedings; that Claimant was a party to both proceedings; that he had a full and fair opportunity to litigate the issue before the Commission; and that the determination concerning his physical capacity to work was essential to the judgment. Finally, citing *Gunter v. WCAB (City of Philadelphia)*, 573 Pa. 386, 825 A.2d 1236 (2003), the Board reasoned that both Philadelphia Civil Service Regulation 32 and the Workers' Compensation Act are similar in intent and form, each maintaining a focus on providing compensation to individuals who suffer work-related injuries. Given its decision to afford preclusive effect to the Commission's decision, the Board reversed the workers' compensation judge's reinstatement award.[6]

▮ Both Claimant and Employer filed petitions for review in the Commonwealth Court, which affirmed in a published opinion, following the Board's reasoning. *See Cohen v. WCAB (City of Philadelphia)*, 869 A.2d 1175 (Pa.Cmwlth.2005). We allowed appeal to consider the legal question of whether collateral estoppel should apply in this context, over which our review is plenary.

Presently, Claimant maintains that the Commission's decision does not satisfy several of the elements required to support the application of collateral estoppel, and, therefore, the precept should not have been interposed to foreclose him from obtaining relief in the workers' compensation setting. According to Claimant, there is a substantial distinction between the issues pertaining in civil service proceedings and workers' compensation proceedings. Claimant's position is that the former focus solely on the City's choice of work status, whereas, the latter center upon whether the claimant has suffered a renewed decrease in his earnings capacity.[7] Claimant acknowledges a line of cases in which Pennsylvania

6. The Board affirmed the denial of the City's termination petition, however, without reference to the doctrine of collateral estoppel. It may well be that this approach was based on the understanding that there was no need to finally determine whether Claimant's injuries were permanently resolved in merely deciding his present duty status.

7. As examples of cases in which courts have determined that collateral estoppel should not apply based on insufficient identity of issues,

courts have deemed Regulation 32 to be similar in intent and form to the Workers' Compensation Act, such that various principles enunciated in interpreting the Act may be of some relevance to certain Regulation 32 determinations.[8] He contends, however, that relevance for interpretive purposes is different from preclusive effect and argues, moreover, that the reasoning of these decisions should apply only in those cases where similar substantive issues are involved.[9]

Additionally, Claimant contends that the policies animating the Workers' Compensation Act differ substantially from

Claimant references: *Gunter v. WCAB (City of Philadelphia)*, 771 A.2d 865, 869–70 (Pa.Cmwlth.2001) (holding that the "in performance of his duties" requirement relative to injured-on-duty benefits under Regulation 32 is materially distinct from the "in the course of employment" requirement to support workers' compensation benefits), *aff'd on other grounds*, 573 Pa. 386, 825 A.2d 1236 (2003); *Cantarella v. DOC*, 835 A.2d 870, 873–74 & n. 8 (Pa.Cmwlth.2003) (holding that a finding of abnormal working conditions in the workers' compensation setting did not foreclose a contrary determination by the Department of Corrections in assessing the availability of full-salary benefits under an enactment affording such benefits to corrections officers injured by inmates); and *Galloway v. WCAB (PSP)*, 690 A.2d 1288, 1291–92 (Pa.Cmwlth. 1997) (holding that the issue of whether an injury is permanent for purposes of the Heart and Lung Act differs from the question of whether the claimant has later recovered some or all of his earnings power, for purposes of benefits suspension under the Workers' Compensation Act).

8. *See, e.g., Sammons v. CSC of City of Phila.*, 673 A.2d 998, 1002 (Pa.Cmwlth.1996) (holding that payment of injured-on-duty benefits under Regulation 32 should be given the same effect as issuance of a notice of compensation payable under the Workers' Compensation Act), *aff'd by equally divided court*, 555 Pa. 1, 722 A.2d 1012 (1998); *City of Philadelphia v. Hays*, 13 Pa.Cmwlth. 621, 626, 320 A.2d 406, 409 (Pa.Cmwlth.1974) ("[T]he principles of law laid down by the courts in interpreting the Workmen's Compensation Act are applicable in the interpretation of similar provisions in Regulation 32.").

9. *See Gunter*, 771 A.2d at 868 n. 5 (holding that, given material differences between injured-on-duty status and eligibility for benefits under the Workers' Compensation Act, a workers' compensation judge's "determination of compensability under the Act is separate for any finding by an employer regarding [injured on duty] benefits, [and the City] was not estopped by its payment of [injured on duty] benefits to [the c]laimant from contesting its liability on her claim petition under the Act."); *accord Gunter*, 573 Pa. at 394, 825 A.2d at 1241 (characterizing as cogent the City's argument that determinations under Regulation 32 should not control relative to workers' compensation proceedings where similar issues are not involved).

those underlying the Philadelphia Civil Service Regulations, making any association between findings or outcomes inapt.[10] Claimant asserts that the ultimate goal of the workers' compensation program is to make injured workers whole, whereas, the Philadelphia Civil Service Regulations are intended to facilitate the efficient administration of local government by dictating the hiring, firing, promotion, and demotion rules for City employees.[11] More specifically, Claimant argues that the purpose of Regulation 32 is to authorize the City to compel its employees to do what the City commands. In this regard (and in support of the above-described arguments concerning dissimilarity of issues), Claimant further highlights the following asserted differences between the Workers' Compensation Act and Regulation 32:

> The Act awards payment of medical and wage loss benefits, penalties, attorneys' fees, and reimbursement of litigation costs. The Regulations authorize only the reinstatement of personal time expended during the appeal and conversion of that time to [injured on duty] status without the awarding of penalties, attorneys' fees, or litigation costs (32.11).

> The Act requires a due process hearing *before* there can be any change in the employee's compensation status and prohibits "self-help" action by the employer. Regulations 32.044 and 32.11 permit the City to unilaterally change the employee's status and classify him as being insubordinate if he challenges that status.

> Section 306(e) of the Act requires only 7 days of disability before jurisdiction for a claim lies and benefits can be

10. *Cf. Verbilla v. WCAB (Schuylkill Nursing Ass'n),* 668 A.2d 601, 604 n. 4 (Pa.Cmwlth.1995) *(en banc)* (explaining that "[a]gencies must look beyond the similarities between the issues, evaluate the policies behind the acts, and apply estoppel only where the issues are identical and the actions promote similar policies and rights.").

11. *Accord* PHILA. CIV. SERV. REG. 1.01 (articulating the purposes of the City's civil service regulations as to "implement the [Home Rule] Charter provisions relating to the establishment and administration of a merit system"); *cf. Morrison v. DOC,* 659 A.2d 620, 624 (Pa.Cmwlth. 1995) (explaining that "[t]he Civil Service Act addresses the operation of the civil service and the means and manner of appointment of employees, and how they are transferred, reinstated, or discharged.").

awarded. 77 P.S. § 514. Regulation 32.121 requires 10 days of expended personal time during an appeal before jurisdiction lies with the [Philadelphia Civil Service Commission]. Furthermore, all of the employee's benefits can be stopped including the removal of the employee from an approved modified position during an appeal without penalty or consequence to the City.

The Regulations require City employees to treat only with City physicians in order to receive civil service benefits, even after 90 days. The Act permits treatment with a physician of the employee's own choosing after 90 days.

The Act requires notification of a work-related injury within 120 days. Furthermore, the statute of limitations allows a claim for disability benefits to be brought within three years and a resumption of those benefits of 500 weeks. However, the Regulations require an appeal to be filed within 15 days of notice of rejection of a claimed work injury (32.12), or 30 days of a change of duty status (32.11).

The Act requires an employer to promptly investigate a claim and commence payment of compensation benefits within 21 days of its notice of injury or face a monetary penalty. During those 21 days, the employer must either accept, reject, or temporarily accept an injury and specifically define an accepted injury by body part and type. The Regulations do not impose equivalent requirements upon the City.

The Act mandates a Notice of Compensation Payable to acknowledge and describe the employee's injury and his pre-injury earnings. The Regulations do not impose an equivalent requirement upon the City.

The Regulations permit the City to terminate [benefits] if his injury is permanent. The Act permits the employee to continue to receive benefits.

The Act requires competent testimony from the employer regarding job availability and physical requirements. The Regulations do not impose an equivalent requirement upon the City before changing an employee's status.

Brief for Appellant at 51–53. Claimant thus contends that the City's civil service regulations are not coextensive with the specialized, statewide workers' compensation scheme and lack critical protections that must be afforded to employees, including the prohibition against unilateral self-help measures by employers. Indeed, it is Claimant's position that Regulation 32.11 represents a form of self-help on the part of the City that would be wholly impermissible under the remedial workers' compensation scheme.[12]

Furthermore, Claimant argues that, even if this Court were to determine that the technical requirements of collateral estoppel were met, the doctrine need not be applied rotely. Claimant develops this argument by reference to the Second Restatement of Judgments, which discusses a "need for flexibility in the operative principles" of collateral estoppel. RESTATEMENT (SECOND) OF JUDGMENTS, Introductory Note to Ch. 3, Top. 2, Tit. E (Issue Preclusion).[13] According to Claimant, the public interest will be affected, directly and adversely, by a decision permitting municipal civil service commissions to decide workers' compensation issues. In this regard, Claimant highlights that the Workers' Compensation Act is unique social legislation enacted under specific constitutional authority, *see* PA. CONST. art. III § 18,[14] for the protection of most employees in the Commonwealth; develops that workers' compensation judges are trained in the specialized legal and

12. *See generally Robb, Leonard & Mulvihill v. WCAB (Hooper)*, 746 A.2d 1175, 1182–83 (Pa.Cmwlth.2000) (*en banc*) (admonishing that the Workers' Compensation Act "does not give the employer the right of self-help, *i.e.*, the right to ignore the requirements of the Act and unilaterally suspend benefits without following the prescribed statutory remedies"; instead, the "preconditions placed upon the employer before it may stop paying compensation benefits to a claimant advance the public policy underlying the Act and are not overly burdensome to the employer").

13. *See generally Rue v. K–Mart Corp.*, 552 Pa. 13, 20–21, 713 A.2d 82, 86 (1998) (citing favorably to Section 28 of the Second Restatement of Judgments, which delineates exceptions to the collateral estoppel doctrine).

14. *See generally East v. WCAB (USX Corp./Clairton)*, 574 Pa. 16, 25, 828 A.2d 1016, 1021 (2003) (observing that "in a significant constitutional sense, workers' compensation proceedings are *sui generis*").

medical matters pertinent to their duties; and observes that the General Assembly has taken pains to standardize practices and procedures in furtherance of a uniform, statewide system. Claimant asserts that this scheme will be undermined if collateral estoppel is applied in the present situation, since local governments will likely chose to litigate employees' claims to benefits for work-related injuries within their own, idiosyncratic civil service systems. The result, Claimant contends, would foster abuse by permitting local government employers to avoid the specialized expertise and scrutiny of neutral, professional workers' compensation judges and Board members, subject claims to consideration by untrained political appointees having interests aligned with those of government-employers, and undermine uniformity and workers' entitlements. Indeed, Claimant analogizes the present situation to one that the Commonwealth Court characterized as an effort by an employer to "effectively 'sandbag' the compensation system." *Francisco v. WCAB (Patterson–Kelley Co.)*, 707 A.2d 584, 588 n. 5 (Pa.Cmwlth.1998). Thus, Claimant argues that "a fresh determination of the factual issues by a [workers' compensation judge] is warranted." *Verbilla*, 668 A.2d at 605. Finally, in support of his policy arguments, Claimant references a series of cases holding that decisions of unemployment compensation referees are not binding in various contexts, even where the issues are identical.[15]

**15.** *See Rue*, 552 Pa. at 20–21, 713 A.2d at 86–87 (holding that principles of collateral estoppel do not bind courts in civil actions relative to decisions of unemployment compensation referees); *Verbilla v. WCAB (Schuylkill Nursing Ass'n)*, 668 A.2d 601, 604 (Pa.Cmwlth.1995) (en banc) (holding that decisions of unemployment compensation referees are not binding in workers' compensation proceedings); *cf. Bortz v. WCAB (Reznor Div. of FL Indus.)*, 656 A.2d 554 (Pa.Cmwlth.1995) (*en banc*) (holding, based in part on non-identity of issues, that a prior decision by an unemployment compensation referee on the issue of willful misconduct did not preclude an employer from asserting unsatisfactory job performance and/or misconduct as a defense to a reinstatement petition in a workers' compensation proceeding), *aff'd*, 546 Pa. 77, 683 A.2d 259 (Pa.1996); *Morrison v. DOC*, 659 A.2d 620, 625–26 (Pa.Cmwlth.1995) (based primarily on non-identity of issues, holding that a decision by an unemployment compensation referee did not yield a preclusive effect in a civil-service, just-cause termination proceeding).

The City, on the other hand, maintains that the Commission's decision to terminate injured-on-duty benefits meets the necessary elements for collateral estoppel relative to the workers' compensation judge's reinstatement decision. The City follows the approach of the Commonwealth Court and the Board in discerning an identity of issue between the Commission's conclusion that Claimant was capable of performing full duty and the workers' compensation judge's determination concerning earning capacity. The City proceeds to furnish a description of the various procedures and burdens in the civil service and workers' compensation contexts, including references to the City's burden in a Regulation 32 appeal, *see Sweed v. City of Phila.*, 687 A.2d 59, 62 (Pa.Cmwlth.1996), and the Claimant's burden relative to reinstatement of workers' compensation benefits. *See* 77 P.S. § 772; *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 33–34, 584 A.2d 301, 305 (1990). The perspective of the City is that the considerations in a Regulation 32 appeal are more favorable to claimants than those prevailing in a workers' compensation reinstatement context, because the employer is the party with the burden to prove that the employee is no longer disabled or that the employee's current disability is not related to his previous work injury. As such, and because the City actually proved before the Commission that Claimant was able to perform his full duties, it is the City's position that the reinstatement petition which, by its nature, depended on the same allegations, must fail.

As to policy, the City references the *Sammons* line of decisions relying on the similarities in intent and form between the Workers' Compensation Act and Regulation 32 in applying common interpretive principles to some provisions. *See supra* note 8. Indeed, the City contends that issue preclusion principles have been consistently applied between Regulation 32 and workers' compensation proceedings for over thirty years.[16]

16. *See Harrington v. WCAB (City of Philadelphia)*, 15 Pa.Cmwlth.119, 121–23, 325 A.2d 337, 338–39 (Pa.Cmwlth.1974) (holding that a claimant was precluded from relitigating, in the workers' compensation

The City also observes that, in support of their respective petitions in the workers' compensation proceedings, the parties presented the same evidence as was submitted to the Commission on Claimant's Regulation 32 appeal. Further, it criticizes the workers' compensation judge's perspective concerning issue preclusion as superficial. Specifically, it develops that—whereas she distinguished the procedures available in the civil service and workers' compensation settings on the basis that a workers' compensation judge may subpoena witnesses, hear evidence, make a record of hearings and issue findings, conclusions and orders—the Commission actually possesses similar powers in these regards. Finally, the City disputes Claimant's argument that local governments will attempt to subvert the workers' compensation system by channeling benefits matters in such a way as to obtain dispositive rulings in a preferred forum. In this respect, the City asserts that the allegation of bias on the part of municipal civil service commissions is unfounded and observes that it is the employee who elects to invoke the Commission's jurisdiction under Regulation 32.11 in any event.

█ Preliminarily, we credit various of the City's arguments. First, we agree with the City that Claimant's allegations of bias are bald, unfounded, and conflict with the presumption of regularity that courts generally afford to administrative proceedings. *See, e.g., Cross County Entertainment, Inc. v. Commonwealth,* 101 Pa.Cmwlth. 98, 103, 515 A.2d 997, 999 (1986). The City's critique of some of the workers' compensation judge's reasoning in declining to apply preclusion principles is also apt, as workers' compensa-

setting, the issue of whether his injury was suffered in the course of employment, which previously was decided in a Regulation 32 proceeding); *cf. Callaghan v. WCAB (City of Philadelphia),* 750 A.2d 408, 413 (Pa.Cmwlth.2000) (applying issue preclusion to foreclose relitigation of whether a workers' compensation claimant's termination of employment was based on just cause, based on a Commission decision that just cause was present); *Pasquarello v. Civil Serv. Comm'n of Philadelphia,* 52 Pa.Cmwlth. 494, 498–99, 416 A.2d 106, 108 (Pa.Cmwlth.1980) (requiring the Philadelphia Civil Service Commission to consider the possible preclusive effect of a decision by the findings of a workmen's compensation referee).

tion judges and the Commission do enjoy similar powers on the points that were discussed. We also agree with the City that there is a sufficient identity between the dispositive issues in the Commission and workers' compensation proceedings to satisfy the first element of collateral estoppel. On this point, certainly Claimant is correct that the term "disability" is defined differently in the workers' compensation setting to subsume both physical capacity to work and job availability. *See, e.g., Dillon v. WCAB (Greenwich Collieries)*, 536 Pa. 490, 501–02, 640 A.2d 386, 392 (1994). However, in the Regulation 32.11 setting in which this case arises, disability need only encompass the physical capacity factor, because the employer has required the claimant to report to a specific job that was held open. *See* PHILA. CIV. SERV. REG. 32.11 (providing for an appeal to the Commission from a directive to the claimant to return to work).[17] Finally, we perceive a greater degree of commonality, than does Claimant, in the policies and objectives of the Workers' Compensation Act and Regulation 32's affordance of full-salary benefits to injured police officers, as we believe that they do share an underlying humanitarian objective.

Nevertheless, we conclude that the workers' compensation judge ultimately was correct in conducting her own evaluation of the evidence concerning Claimant's reinstatement petition. In the first instance, we agree with Claimant's position that the decisions applying common principles as between workers' compensation and Regulation 32 proceedings, *see supra* note 8, are not controlling in terms of whether Regulation 32 proceedings should be accorded preclusive effect in the work-

---

**17.** We do not attach a great deal of significance, however, to the fact that the employee initiates the appeal under Regulation 32.11. Certainly, it would be possible to force the claimant who desires a dispositive ruling concerning earning capacity by a workers' compensation judge into an election between pursuing a workers' compensation decision and preserving the possibility of full-salary payments under Regulation 32. We believe that one important purpose of Regulation 32, however, is to afford supplemental benefits to police officers in recognition of their essential social contributions and the risks that attend them. We do not believe, therefore, that police officers should be specially foreclosed from a workers' compensation decision merely because they pursued an appeal relative to such supplemental benefits.

ers' compensation setting. Moreover, we find the present situation sufficiently analogous to the line of cases declining to apply collateral estoppel relative to decisions of unemployment compensation referees in subsequent civil and workers' compensation proceedings. *See supra* note 15. Significantly, this Court's decision in this line relied on the substantial procedural and economic disparities between unemployment compensation proceedings and later civil and administrative proceedings. *See Rue,* 552 Pa. at 20–21, 713 A.2d at 86–87.

In the present context, Regulation 32 implements a scheme by which the City affords wage-loss and other benefits in lieu of workers' compensation benefits for a closed period, consistent with the City's obligations under the Heart and Lung Act. Payment of salary is limited to one year, subject to potential extension by the City for a period of up to three years. *See* PHILA. CIV. SERV. REG. 32.05. Both because liability under the Workers' Compensation Act may span a substantially longer period and because the benefits available under Regulation 32 supplant workers' compensation benefits for a defined period, the employee's net recovery, and the City's (or any insurer's) net risk, under Regulation 32 is substantially narrower in scope than the potential liability under the workers' compensation scheme. In particular, with regard to an employee claiming total disability, the net amounts in controversy in Regulation 32 proceedings are substantially lower than in a workers' compensation matter that may result in lifetime benefits. *See* 77 P.S. § 511. On the procedural side, the Workers' Compensation Act details extensive procedures for resolving various disputes concerning benefits, *see* 77 P.S. §§ 701–791, that are lacking under Regulation 32. Thus, although the Commission has tools at its disposal similar to those available to a workers' compensation judge, such as the power to issue subpoenas, the procedures under Regulation 32 are substantially more *ad hoc* than those pertaining in the workers' compensation arena.

Moreover, we agree with Claimant that, in recognition of the special character of the Pennsylvania workers' compensation system, it is preferable to permit the determination of

disability for purposes of workers' compensation benefits to be made within that scheme, as opposed to by a local civil service commission. As this Court has previously explained, the Workers' Compensation Act's "uniquely detailed substantive and procedural provisions" supplant traditional common law rights and remedies, limiting recoveries in a manner that, in any other context, would be beyond the Legislature's authority. *East*, 574 Pa. at 25, 828 A.2d at 1021. Philadelphia's civil service regulations, on the other hand, arise in a significantly different landscape and have a substantially different focus, as they encompass many other forms of employment actions and decisions, with which Regulation 32 benefits are intermingled. Consequently, the Commission administers appeals concerning a materially broader range of subject matter extrinsic to the uniquely structured environment of the Workers' Compensation Act.

In summary, we recognize the unique nature of the workers' compensation scheme, the substantial interest of claimants at stake, and the procedural and economic differences as compared to Regulation 32 proceedings. Further, we are reluctant to construe a scheme affording special remuneration to injured police officers as foreclosing such officers' access to review in the workers' compensation system on the critical question of disability. Accordingly, we find it appropriate to allow the decision concerning earnings capacity under the Workers' Compensation Act to be made in a manner contemplated within such remedial legislation.

Finally, we realize that our decision is in tension with aspects of the Commonwealth Court's *Harrington* line of cases. *See supra* note 16. Significantly, however, in those decisions the court did not consider the specific policy arguments that are presently before us.[18]

18. Our holding is also arguably in tension with aspects of another Commonwealth Court decision applying collateral estoppel in workers' compensation proceedings due to a prior determination under the Heart and Lung Act, *see Kohut v. WCAB (Township of Forward)*, 153 Pa.Cmwlth. 382, 388–89, 621 A.2d 1101, 1103–04 (1993), which determinations are sometimes made by local civil service commissions. Notably, however, the Commonwealth Court itself has elected in subse-

The order of the Commonwealth Court is reversed, and the case is remanded to the Workers' Compensation Appeal Board, via the Commonwealth Court, for consideration of any outstanding issues raised by the City, and, if there is none, reinstatement of the award fashioned by the workers' compensation judge.

Chief Justice CAPPY, and Justices CASTILLE, NEWMAN, EAKIN and BAER join the opinion.

Justice BALDWIN concurs in the result.

quent decisions to limit *Kohut* to its facts. *See, e.g., City of Pittsburgh v. WCAB (McGrew)*, 785 A.2d 170, 172, 174 (Pa.Cmwlth.2001) (limiting *Kohut* to its facts and explaining that the decision "merely prevents an employer from arguing contrary positions at the same time in order to satisfy different legal standards"); *Benginia v. WCAB (City of Scranton)*, 805 A.2d 1272, 1277 n. 10 (Pa.Cmwlth.2002) (same).